```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEBRASKA

TAMMY JOHNSON, Informal         )
Personal Representative of      )
the Estate of Hyrum S.          )
Johnson, Deceased.,             )
                                )          8:05CV373
            Plaintiff,          )
                                )
       v.                       )
                                )     MEMORANDUM AND ORDER
UNION PACIFIC RAILROAD          )
COMPANY, a Delaware             )
Corporation,                    )
                                )
            Defendant.          )
```

INTRODUCTION

The plaintiff has filed suit against the defendant Union Pacific Railroad Company ("UPRR") pursuant to the Federal Employers Liability Act, 45 U.S.C. § 51, et seq ("FELA"). UPRR moves the court for an order excluding the plaintiff's expert witness, Larry Kiley, from testifying that the following alleged negligence by the railroad caused or contributed to the plaintiff's injuries:

1) there was "close clearance" between the tracks in the west bowl of the Bailey Yard in North Platte, Nebraska on June 2, 2002;

2) the lighting at the time and place of plaintiff's accident was insufficient;

3) on March 21, 2007, an employee of Union Pacific did not know the significance of the second blast of a warning horn while the parties and plaintiff's expert performed a site inspection at the location of plaintiff's 2002 injury; and

4) the railroad failed to have a rule stating adjacent tracks must be blocked out during humping operations.

Filing 164, p. 2.  The plaintiff opposes the defendant's motion, and further states that in addition to the opinions discussed in the defendant's motion, Mr. Kiley should be permitted to offer his proffered opinion that "Union Pacific violated its own safety rule, that safety is the first priority on the railroad, by not implementing rules and procedures to protect workers in the bowl."  Filing 168, (Plaintiff's brief), p. 4.

For the reasons set forth hereafter, the court finds that Mr. Kiley's proposed expert testimony should be excluded.

## STANDARD OF REVIEW

Pursuant to <u>Daubert v. Merrell Dow Pharm</u>., 509 U.S. 579 (1993), the district court must fulfill a gatekeeper role of screening expert testimony for relevance and reliability. <u>Daubert</u>, 509 U.S. at 591-93.  The proponent of proposed expert testimony must prove, by a preponderance of the evidence, that the testimony is admissible under Rule 702 of the Federal Rules of Evidence.  <u>Daubert</u>, 509 U.S. at 592.

There are three prerequisites for admissibility of expert testimony under Rule 702.

1)  The evidence must be relevant; that is, evidence based on scientific, technical, or other specialized knowledge must be useful to the jury in deciding the ultimate issue of fact.

2)  As to the specific opinions the expert intends to offer, the proposed witness must be qualified to render such opinions.

3.  The proposed evidence must be reliable or trustworthy in an evidentiary sense:  It must be based upon

2

>  sufficient facts or data; be the product of reliable
>  principles and methods; and be based on the witness'
>  appropriate application of these principles and methods
>  to the facts of the case.

Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001).  The Daubert standard governs the application of Rule 702 of the Federal Rules of Evidence and, as such, is equally applicable to FELA and non-FELA actions.  See Claar v. Burlington Northern Railroad Company, 29 F.3d 499 (9th Cir. 1994).

## ANALYSIS

A.  Kiley's Qualifications.

In 1974, Mr. Kiley received an associates of arts degree from Johnson County Community College in Law Enforcement and Police Administration.  Filing 168, ex. 2.  He began working as a railroad locomotive engineer, conductor, brakeman, switchman, and maintenance engineer while still in college.

From 1973 through 1989, Mr. Kiley operated trains, supervised their operation, or was a rules instructor on the General Code of Operating Rules.  Filing 166, ex. 1 (Kiley deposition), pp. 27-29; filing 168, ex. 2.  He did not build or inspect tracks.

From 1990 to 2000, Mr. Kiley was employed as an inspector for the Federal Railway Administration ("FRA") and inspected railroad compliance with FRA rules during operating practices.  "Operating practices" includes the movement of trains during yard and main line operations.  Filing 166, ex. 1 (Kiley deposition),

3

pp. 22-23.  Mr. Kiley did not perform FRA inspections for track safety compliance, track conditions, or signal problems.  Filing 166, ex. 1 (Kiley deposition), pp. 23, 27.

During his entire railroad career, spanning from 1973 through 2000 when he retired from the FRA, Mr. Kiley received no training on track inspection standards or FRA track classification or inspection standards.  Filing 166, ex. 1 (Kiley deposition), p. 29.

> B.   Kiley's Opinions

> 1.   "Close Clearance" of the tracks.

Mr. Kiley performed an inspection of the accident site on March 21, 2007.  He concluded the tracks in the west bowl of the Bailey Yard in North Platte, Nebraska were too close together.  The investigator for the plaintiff's law firm measured the track clearance from center line to center line--the standard method of measuring track in the railroad industry and the measurement applicable under FRA and Nebraska Public Service Commission standards.  Mr. Kiley did not note the centerline-to-centerline measurement.  Instead, he measured the track rail-to-rail, but then "got to thinking back" and recalled that "the track maintenance people he had seen doing that particular job would always measure the rail from center line to center line." Filing 166, ex. 1 (Kiley deposition), p. 39.  Mr. Kiley had never performed such measurements before this site visit.  Filing 166, ex. 1 (Kiley deposition), p. 39-41.

Mr. Kiley concluded the clearance distances between the yard tracks in the area where the plaintiff was injured complied with the standards of the industry.  However, "when you put two

4

railroad cars in there, you only had about -- about 44 inches to work between the cars.  That doesn't leave you a lot of room for movement." Filing 166, ex. 1 (Kiley deposition), p. 47.  "[W]hen the cars were on those tacks, cars don't leave you much room to stand in between and work in between." Filing 166, ex. 1 (Kiley deposition), p. 77.  Mr. Kiley intends to offer this expert opinion based on his prior work experience, his site visit, and the photographs taken during that site visit.  Filing 166, ex. 1 (Kiley deposition), pp. 47, 77.

Though couched as an expert opinion, Mr. Kiley's opinion that the tracks were too close together at the site of the plaintiff's accident does not relate scientific, technical, or other specialized knowledge beyond the province of a lay juror.  Based on the measurements and pictures taken at the site visit, a lay juror is capable of assessing whether a 44-inch clearance between the rail cars on the track was unreasonable and presented an unsafe work environment.  "[W]hen the layman juror would be able to make a common sense determination of the issue without the technical aid of such an expert, the expert testimony should be excluded as superfluous." U.S. v. Kime, 99 F.3d 870, 884 (8th Cir. 1996).

   2.   Insufficient Lighting.

The accident at issue occurred during nighttime hours.  Mr. Kiley's site inspection of the accident scene occurred during the day.  He has never inspected this area at night.  The last time he was at this location at night was in the 1990s, and "back in the '90s Bailey yard was not near as lit as it is now." Filing 166, ex. 1 (Kiley deposition), p. 44.  He intends to offer an opinion that the lighting was insufficient at the place and time

of the plaintiff's accident based on the deposition testimony in this case and the deponents' references to lighting problems and understaffed maintenance crews. From that testimony, he opines that track workers could not see an approaching train due to poor lighting. Filing 166, ex. 1 (Kiley deposition), p. 43-45, 76.

Other than his personal summary of the testimony of lay witnesses, Mr. Kiley has no factual basis for concluding the lighting at the time and place of the plaintiff's accident was insufficient. He has performed no tests or inspections to determine the amount of lighting at the accident scene when the plaintiff's accident occurred. "Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis." Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000). To the extent that Mr. Kiley bases his opinion on the facts related by lay witnesses and his assessment of those witness' credibility, his opinion provides no specialized knowledge for the jury's consideration and invades the province of the jury.

3.   Lack of Knowledge Regarding the Warning Horn.

At the time of the March 21, 2007 site visit performed in preparation for this trial, a warning horn blew. Mr. Briley, a watchman, told Mr. Kiley that the warning indicated car movement. When a second horn of a different pitch blew, Mr. Briley stated he did not know what the second warning indicated. Based on this event, Mr. Kiley intends to testify that the railroad's negligence caused or contributed to the plaintiff's accident five years earlier.

6

A watchman's lack of knowledge as to the meaning of a second warning horn on March 21, 2007 is not relevant to an accident that occurred five years earlier, particularly where the plaintiff's complaint raises no allegations related to the use of a warning horn.  Moreover, Mr. Kiley's conclusion as to what the watchman should have known in March 2007 is not beyond the province of a lay juror.


4.   Lack of a Rule Requiring Adjacent Tracks to Be Blocked.

Mr. Kiley opines that the railroad's safety rules were insufficient because they did not require protection on adjacent tracks, in addition to the track on which the work was being performed.  He claims the railroad could have ensured safety by removing every other track in the UPRR bowl at the Bailey Yard to provide sufficient clearance for workers, or by creating a rule requiring employees to block out the tracks adjacent to the one being worked on.  Filing 166, ex. 1 (Kiley deposition), pp. 79-80.

Although this area of Mr. Kiley's proposed expert testimony presents of closer question, upon reading Mr. Kiley's testimony and report, the court is not convinced he can provide expert assistance to the jury on this issue.  Mr. Kiley may be an expert on determining compliance with existing FRA operating rules and the General Code of Operating Rules, the rules governing train movement, but the record discloses no expertise in drafting such rules, or any factual or expert basis for determining when and to what extent the rule he proposes would have hindered or eliminated the type of accident at issue in this case.  See e.g. Robertson v. Norton Co., 148 F.3d 905, 907 (8th Cir. 1998)(holding an expert qualified to testify on a

manufacturing defect was not qualified to testify as warnings expert).  Mr. Kiley has no reliable specialized or scientific basis for concluding that failing to have the proposed explicit rule caused or contributed this plaintiff's accident.  Further, he has offered no evidence that he, by virtue of his training and experience, is more capable than a lay juror to read the language of rules at issue in this case and interpret whether it applied to the plaintiff's accident.

     5.   The UPRR violated safety rules.

Mr. Kiley intends to testify that the UPRR violated its own safety rules by failing to implement rules and procedures protecting workers in the bowl.  This opinion was not disclosed in the expert report and was elicited at the deposition only upon questioning by plaintiff's counsel.  For that reason alone, this opinion could be excluded as untimely disclosed.

More importantly, and for all the reasons previously stated, this opinion is not admissible expert testimony.  Rather, it places an "expert" moniker on a matter within the province of a lay juror; specifically, whether UPRR failed to provide the plaintiff with a reasonably safe place to work.

I find Mr. Kiley's proposed testimony is not truly expert in nature, and his conclusions are not "the product of reliable principles and methods" in the relevant field.  Fed. R. Evid. 702 (2).  His opinions are inadmissible under Rule 702 of the Federal Rules of Evidence.

THEREFORE IT HEREBY IS ORDERED:

1.  The defendant's motion in limine, filing 164, is granted.

2.  Plaintiff's proposed expert witness, Larry Kiley, will not be permitted to testify as an expert witness at trial.

DATED this 24th day of September, 2007.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge