```
              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA

TAMMY JOHNSON, Informal         )
Personal Representative of      )
the Estate of Hyrum S.          )
Johnson, Deceased.,             )
                                )
              Plaintiff,        )        8:05CV373
                                )
       v.                       )
                                )
UNION PACIFIC RAILROAD          )        MEMORANDUM AND ORDER
COMPANY, a Delaware             )
Corporation,                    )
                                )
              Defendant.        )
                                )
```

Pending before me are the motions in limine filed by the defendant, Union Pacific Railroad Company ("UPRR"), (filing 169), and the plaintiff, (filing 173).

### Defendant's Motion in Limine
Filing 169

UPRR requests an order precluding plaintiff, her counsel, and her witnesses from directly or indirectly presenting or arguing 28 separate categories of information. As to several of these categories, the plaintiff does not object to entry of an order in limine. Other categories remain in dispute.

The plaintiff does not oppose UPRR's motion in limine regarding the following topics. Accordingly, the plaintiff, her counsel, and her witnesses shall not present or argue that:

-- UPRR's negligence caused to contributed to Mr. Johnson's death. Filing 169, ¶ 5.

-- Mr. Johnson experienced economic loss or other general damages following the date of his death. Filing 169, ¶ 6.

- -- Union Pacific reduced the size of the trim crews in the yard to save money, or that Union Pacific trim crews often take shortcuts or hurry. Filing 169, ¶ 9.

- -- Mr. Johnson experienced work-related injuries after returning to work at UPRR. Filing 169, ¶ 15.

- -- The plaintiff experienced or should recover for loss of consortium or for services rendered by Mrs. Johnson for Mr. Johnson's care while he was disabled and recovering from his injury. Filing 169, ¶ 18.

- -- UPRR merged with Southern Pacific Railway Company, or any reference to UPRR being the largest railroad company in North America. Filing 169, ¶ 23.

- -- Union Pacific is solvent, or is financially able to pay a verdict or satisfy a judgment in this case. Filing 169, ¶ 24.

- -- The media, most notably the New York Times, has published reports concerning alleged spoliation of evidence. Filing 169, ¶ 27.

- -- Mr. Johnson was treated by "railroad doctors" or similar descriptive references.

The following topics raised in UPRR's motion in limine are in dispute. Each will be addressed in turn.

   A.   Post-accident changes to the safety or operating rules; enactment of Superintendent's Bulletin No. 77, (filing 169, ¶ 1).

Following the plaintiff's accident, UPRR apparently issued Superintendent's Bulletin 77 which required persons working on bowl tracks to "block out" adjacent tracks. UPRR claims this evidence is inadmissible as a "subsequent remedial measure" under Rule 407. The plaintiff claims that this evidence is admissible to refute any claim that Hyrum Johnson was contributorily negligent or to impeach the testimony of the UPRR witnesses.

2

The court cannot rule, in limine, on the conditional relevance of this evidence.  Specifically, depending on what issues are raised and evidence is presented by the railroad, the evidence of Superintendent's Bulletin 77 may become relevant and admissible.  However, from a pretrial vantage point, the evidence is not admissible under Rule 407.  The plaintiff will not be permitted to present or argue this evidence unless and until the defendant "opens a door" permitting discussion of this exhibit or rule change as relevant for some reason other than to prove UPRR's negligence.

The court is concerned that any use of this evidence may violate Rule 403.  Therefore, should the plaintiff believe the evidence has become admissible during the course of the trial, the issue must first be raised to the court outside the presence of the jury so that both parties can address the relevancy and Rule 403 concerns, and the court can rule on whether the evidence is admissible at that time.

    B.   The existence of alternative safer methods of work, (filing 169, ¶ 2).

UPRR seeks to exclude any evidence or argument that the work Mr. Johnson was performing on the night of the incident could have been made safer had the adjacent tracks been blocked out.  It argues that the fact that the work could have been made safer is irrelevant under FELA.  The plaintiff argues that evidence that safer job procedures could have existed is relevant to determining whether the railroad exercised reasonable care in providing the plaintiff with a safe place to work.

3

Under the anticipated issues to be litigated in this specific case, the court agrees with the plaintiff's argument. UPRR's motion in limine on this issue is denied.

> C. Inadequate clearance between the tracks in the Bailey Yard West Bowl, (filing 169, ¶ 3).

UPRR argues that the plaintiff should be prohibited from offering any argument, testimony, or evidence that the track clearance in the Bailey Yard was "too close" because the railroad has complied with all applicable regulations concerning track clearance. Specifically, UPRR states that it complied with Nebraska state regulations governing track clearance, and therefore it cannot be found negligent for allowing insufficient clearance between the tracks in the Bailey Yard. The cases cited by the railroad in support of this position address the preemptive force of regulations adopted pursuant to the Federal Railroad Safety Act (FRSA), 49 U.S.C. 20101 *et seq*. Neither party has cited a case addressing whether state regulations can define the per se standard of care owed by the railroad under the FELA.

However, the FELA supplants state law and "displaces any state law trenching on the province of the Act." South Buffalo Ry. Co. v. Ahern, 344 U.S. 367, 371-372 (1953). "Thus, if the Federal Employers' Liability Act applies to an employee's negligence claim, the act supersedes a state's common and statutory law. . . ." Chapman v. Union Pacific R.R., 237 Neb. 617, 623, 467 N.W.2d 388, 393 (1991)(quoting Erie R.R. Co. v. Winfield, 244 U.S. 170 (1917)). Accordingly, complying with the Nebraska's track clearance regulations cannot be interpreted as setting the standard of care owed under the FELA. That said, the

4

Nebraska regulation, and compliance therewith, may be offered as evidence that the railroad used reasonable care and complied with industry track clearance standards.

    D.    Inadequate lighting in the west hump yard, (filing 169, ¶ 4).

UPRR argues that the alleged insufficient lighting and consequent inability to see an approaching train at the time of plaintiff's accident is not relevant because, under the undisputed evidence, the plaintiff never looked for a train.  The plaintiff argues that the allegedly poor lighting is relevant because no one could see rail car movements at night in the location of this accident, and therefore plaintiff's co-workers could not warn the plaintiff of an approaching rail car.  UPRR's motion in limine on this issue will be denied.

    E.    Evidence if prior injuries in the Union Pacific Bailey Yard involving injury by moving equipment unless exactly similar to the incident at issue, (filing 169, ¶ 7); alleged unsafe conditions unrelated to the plaintiff's accident, (filing 169, ¶ 14).

UPRR argues that "to the extent Plaintiff may intend to introduc[e] evidence of unsafe conditions involving similar incidents, such evidence should be excluded as any probative value of such evidence would be greatly outweighed by the unfair prejudice to Defendant from the admission of such evidence." Filing 170, p. 3.  "Although evidence of prior accidents may be admissible to prove notice on the part of a defendant, any such accidents admitted 'must be "sufficiently similar in time, place or circumstances to be probative."'" <u>First Sec. Bank v. Union Pacific Railroad Co</u>., 152 F.3d 877, 879 (8th Cir. 1998).  "For other accident evidence to be admissible, the proponent of the

5

evidence must show that the facts and circumstances of the other incident are substantially similar to the case at bar." <u>First Sec. Bank</u>, 152 F.3d at 880.

UPRR has not specifically identified any accident or injury event that should not be admitted at trial. However, the burden is on the plaintiff, in the first instance, to identify the evidence of other accidents she intends to offer and show how it is relevant to this case. Accordingly, the court will not permit the plaintiff to argue, introduce evidence, or make comments or remarks about prior accidents experienced by UPRR employees while working for the railroad absent first showing that these prior accidents are at least substantially similar to the accident at issue in this case.

>   F.  The actions of defense counsel or Union Pacific employees during the 2007 site inspection of the Bailey Yard, (filing 169, ¶ 8).

The report of Larry Kiley, who was retained to testify in this case, includes comments about counsel for the railroad being startled by noise and perhaps losing her balance during the 2007 site visit at the tracks, and that a supervising employee could not explain the purpose of a second warning horn. The plaintiff argues that these events are somehow relevant to the case. I disagree. UPRR's motion in limine on this issue will be granted.

>   G.  Referring to the lawsuit as a "compensation" case, (filing 169, ¶ 10), and referring to the FELA as the plaintiff's sole remedy because the plaintiff is not eligible for workmen's compensation or retirement benefits, (filing 169, ¶ 11).

UPRR has moved to prohibit the plaintiff from informing the jury that this is a "compensation case," and that an FELA award is the plaintiff's sole remedy. The plaintiff argues that due to

6

the prevalence of worker's compensation in our society, the jury must be told that Hyrum Johnson cannot recover under worker's compensation.

The court can remedy the parties' respective concerns through the jury instructions. Those instructions will simply state that as a railroad employee, the plaintiff's right to recover from UPRR is governed by federal law as set forth in the FELA, and he cannot seek recovery under state worker's compensation laws. The plaintiff will not be permitted to argue this statement of the law at any point during the trial, including during closing argument. The court's statement of the law, as set forth in the jury instructions, will adequately inform the jury.

> H.   Evidence concerning UPRR documents not disclosed prior to trial in this matter, (filing 169, ¶ 12).

UPRR argues the plaintiff should be prohibited from adducing testimony or presenting any argument that Union Pacific documents were not disclosed prior to trial, or were inadvertently produced in this or other litigation but would otherwise be privileged. Though not artfully stated, the railroad is apparently moving to preclude the plaintiff from arguing, without any basis in fact, that the railroad has withheld evidence, or was unwilling to produce evidence in this or other cases absent a court order. The railroad's motion in limine on this issue is granted.

However, if either party presents some factual basis showing the opposing party has withheld evidence relevant to this case, this issue will be revisited, and the court will sanction the offending party and, if warranted, may also present an adverse inference/spoliation instruction to the jury.

    I.    Privileged documents UPRR inadvertently produced in this or other litigation, (filing 169, ¶ 13).

The court cannot fully rule on this motion in the abstract. However, to the extent this court or other courts have ruled that certain UPRR documents are privileged or subject to a protective order, and that any privilege or expectation of confidentiality has not been waived, such documents should not be discussed or argued by plaintiff's counsel at trial.

    J.    Mr. Johnson's reputation for safety on the job or general character regarding safety, (filing 169, ¶ 16).

UPRR did not brief this motion. The plaintiff's brief explains:

> A review of Mr. Johnson's work history with the Union Pacific reveals that during the course of his railroad career he had not been prevented from effectively performing his job duties by reason of being disciplined for lack of safety and that he has always been a dedicated employee. Following his incident, however, Mr. Johnson was unable to perform his job duties and missed significant periods of work which is part of his damages in this case.

Filing 183, p. 13.

Pursuant to Rule 404 of the Federal Rules of Evidence, evidence of a person's character or a trait of character, and evidence of other wrongs or acts, is not admissible for the purpose of proving the plaintiff acted in conformity therewith on the date of his accident. F.R.E. 404(a)&(c). However, the plaintiff argues that his unblemished disciplinary record is admissible to show he was able to work consistently before the accident as opposed to after the accident. The plaintiff claims he was unable to perform his job duties after his accident.

Based on this argument, the relevant issue is whether the plaintiff worked consistently before the accident compared to after the accident, and whether his inability to work after the accident was due to his injuries. The fact that he was able to work consistently before the accident *because* he was never disciplined is not relevant. UPRR's motion in limine on this issue is granted.

>    K.   Mr. Johnson's gross wage loss, (filing 169, ¶ 17); FELA damage awards are subject to federal income tax, (filing 169, ¶ 26).

UPRR argues that the plaintiff should not introduce evidence of plaintiff's gross wage loss at trial. A prevailing FELA plaintiff is entitled to recover his after-tax income losses, not gross wages, and his award is not subject to federal income taxation. Norfolk & Western R. Co. v. Liepelt, 444 U.S. 490, 493-94 (1980). The plaintiff argues that evidence of plaintiff's gross wage loss can nonetheless be offered at trial because gross wage loss is a necessary factor in calculating net wage loss, and the jury is entitled to understand how the plaintiff's net wage loss was calculated to assess whether the numbers advanced by the parties are credible.

The plaintiff's argument is sound, and the court agrees. The parties will be permitted to introduce their respective versions of plaintiff's gross wage loss to explain their net wage loss calculations, and the jury will be properly instructed to award only net economic damages.

UPRR further requests an order, in limine, precluding the plaintiff from arguing or presenting testimony that an FELA damage award is subject to federal income taxation. The plaintiff concedes the law on this point. The jury will be

9

instructed that an FELA award is not subject to federal income taxation.  The plaintiff will not be allowed to argue or present evidence to the contrary.

> L.   Any testimony, argument, reference or evidence concerning any person other than Mr. Johnson completing a personal injury report regarding plaintiff's cause of action, (filing 169, ¶ 19).

The intended scope of this motion in limine is not entirely clear.  To the extent the railroad seeks to exclude the testimony of persons who completed personal injury reports regarding the plaintiff's accident, the motion is denied.  To the extent such testimony is received at trial, it can be argued to the jury.

Though briefly referenced in plaintiff's brief, the court does not read UPRR's motion as addressing whether Hyrum Johnson's personal injury report can be admitted into evidence upon plaintiff's offer.  The parties should be prepared to address that issue at trial.

Citing <u>Lewis v. Baker</u>, 526 F.2d 470 (2nd Cir. 1975), the plaintiff also argues that the personal injury reports completed by other employees are admissible under the business records exception to the hearsay rule.  F.R.E. 803(6).  The record before me does not reveal why the reports were made, who completed these reports, the position those persons held within the company, or other facts surrounding their creation, nor whether the statements made by the persons preparing the reports can be deemed statements of the railroad as a party opponent.

For all the foregoing reasons, UPRR's motion in limine will be denied at this time.  However, the parties should be prepared

to thoroughly address these evidentiary issues at the outset of trial.

>    M.   Union Pacific required its management personnel to reprimand or write up a quota of rules infractions for each shift, (filing 169, ¶ 20).

Absent some evidence to support this allegation, <u>and</u> some reason to believe the allegation is in any way relevant to this case, the plaintiff shall not argue, remark, or comment that UPRR management personnel have a quota for issuing rule infraction citations.

>    N.   The financial disparity between the parties and any evidence and/or jury argument referring to punitive or exemplary damages, or argument suggesting that a message should be sent to Union Pacific, (filing 169, ¶ 21).

UPRR argues the plaintiff should not draw attention to the financial disparity between the parties. On it face, it appears this motion is conceded--the plaintiff "does not intend to make reference to the disparity between her financial condition and that of the UP." Filing 183, p 16. However, the plaintiff points out that the defendant should similarly be precluded from referring to itself as a "family," because references to the corporation as a family would implicitly cast defendant in a parental role, while suggesting that Mr. Johnson is being disloyal to his family by bringing suit. Filing 183, p. 15.

The court questions the need to raise the concern of either party by motion in limine. A North Platte jury knows, without any argument being made, that UPRR is a large corporation with substantially more financial assets than the plaintiff, and I

11

clearly doubt its members can be convinced that bringing a lawsuit against UPRR is akin to suing a parent or family member. Nonetheless, the plaintiff will not be permitted to argue that UPRR is a wealthy corporation or should be sent a message, and the railroad will not be permitted to argue that the plaintiff was in any way disloyal to the railroad by pursuing this FELA case.

> O.   Mr. Johnson's medical bills which have been paid directly by Union Pacific, (filing 169, ¶ 22).

UPRR claims the amount of plaintiff's medical bills, all of which have been paid by the railroad, should not be admitted into evidence because the plaintiff is not entitled to a second recovery of his medical expenses.  The plaintiff does not intend to make a claim for medical expenses which have been paid by the UPRR, (filing 183, p. 16), but nonetheless argues that the amount of the bills is relevant in proving the extent of the plaintiff's injury.

The amount of medical bills may, but need not, have anything to do with the extent of plaintiff's injury.  By way of example, a person may be very injured and nonetheless have few medical bills if, as a practical matter, medical science has nothing to offer in terms of treatment.  As stated in <u>Francis v. National R.R. Passenger Corp</u>., 661 F. Supp. 244, 245 (D. Md. 1987):

> Relevant objective evidence on the extent and nature of injuries consists of the expert testimony of treating physicians and other medical practitioners.  The price tag of treatment does not tend to prove or disprove anything about the nature and extent of injuries, save what it has cost to treat them, which is not recoverable.

Francis, 661 F. Supp. at 245.  See also Varhol v. National R.R. Passenger Corp., 909 F.2d 1557, 1566 (7th Cir. 1990)(holding that since the FELA plaintiff could not recover the expenses reflected in his medical bills, the amounts of those expenses bore little, if any, relevance to proving the nature and extent of plaintiff's injuries, and admitting such evidence presented the possibility of jury confusion, misuse, and double-recovery which outweighed the bills' probative value).

>    P.   The congressional intent or purpose of the FELA, (filing 169, ¶ 25).

The plaintiff contends that she is entitled to explain the purpose of the FELA in a manner "paralleling the discussion" in Sinkler v. Missouri Pac. R. Co., 78 S.Ct. 758 (1958).  The passages from Sinkler cited by the plaintiff state the FELA was adopted in response to the "risks inherent" in railroading for railroad workers who "are helpless to provide adequately for their own safety," and seeks to equitably adjust the "cost of human injury, and inescapable expense of railroading," between the worker and the carrier.  See filing 183, p. 17.  UPRR seeks an order, in limine, precluding the plaintiff from making this argument.

The court is responsible for instructing the jury regarding the law.  To the extent they are supported by evidence received at trial, the jury will be given instructions explaining the elements of the plaintiff's claim and any affirmative defenses raised.  Arguments by counsel explaining why the FELA was enacted in 1939 will not assist the jury in understanding its current task of applying the law as instructed to the facts proven at trial.  In contrast, such arguments may confuse the jury and be unduly prejudicial.  UPRR's motion in limine will be granted.

## Plaintiff's Motion in Limine
Filing 173

The plaintiff seeks to preclude the defendant from offering testimony, evidence, exhibits or argument regarding:

-- Hyrum Johnson's former marriages, religion or child support obligations;

-- any collateral source benefits received by Hyrum Johnson including, but not limited to, railroad retirement disability benefits, sickness benefits or private loans;

-- prior legal proceedings or matters involving Hyrum Johnson; and

-- past, unrelated discipline imposed upon Hyrum Johnson by Defendant in the course of his railroad employment.

Filing 173.  Each will be addressed in turn.

Q. Hyrum Johnson's former marriages, religion or child support obligations, (filing 173, ¶ 1).

The plaintiff seeks to exclude all evidence of plaintiff's prior failed marriages, and his child support obligations.  The plaintiff argues:

> Because Hyrum Johnson's marriages were less than ideal, evidence relating to same is extremely likely to prompt the jury to decide Plaintiff's case on an improper basis.  Similarly, the fact that Hyrum Johnson may or may not have been keeping up with child support payments also prompts a decision on an improper basis.

Filing 172, p. 3.  UPRR argues:

> In the instant case, evidence relating to Mr. Johnson's marriages, religious beliefs, and child support obligations would not be used to prove he acted in conformity with that character; rather, such evidence is probative on the issues of injury and damages.

14

Filing 177, p. 1. Specifically, UPRR states that its expert, Terry A. Davis, M.D., F.A.P.A., will testify that Mr. Johnson suffered from pain disorder, a type of somatoform disorder, wherein the psychosocial stressors of marital and financial problems caused his symptoms of pain to wax and wane. Filing 177, p. 2.

The deposition of Dr. Davis is not in evidence. UPRR intends to call Dr. Davis to testify at trial. The plaintiff has been given leave to address the admissibility of Dr. Davis' opinions when he submits his trial brief, and presumably the court will then have an opportunity to review this expert's testimony in total. The court will delay ruling on this motion in limine until it receives a copy of the expert's deposition so it can better assess the relevancy and Rule 403 issues raised in plaintiff's motion and the railroad's response.

> R. Collateral source benefits received by Hyrum Johnson including, but not limited to, railroad retirement disability benefits, sickness benefits or private loans, (filing 173, ¶ 2).

"Ordinarily payments received from collateral sources are not allowed to be introduced into evidence." Lange v. Missouri Pacific R. Co., 703 F.2d 322, 324 (8th Cir. 1983). The railroad argues, however, that such evidence is admissible to show the plaintiff lacked any real incentive to return to work (was malingering), or to refute plaintiff's claim that he lacked financial viability as a result of the accident.

As with the subsequent remedial measure issues previously addressed, the court cannot rule, in limine, on the conditional relevance of this evidence. UPRR may not, however, raise the collateral source evidence at trial absent first raising the

15

issue before the court for further assessment in the context of the actual trial proceedings.

    S.    Prior legal proceedings or matters involving Hyrum Johnson, (filing 173, ¶ 3).

The plaintiff argues that Hyrum Johnson's prior unrelated legal proceedings, for example, his prior bankruptcy, are irrelevant. UPRR's brief does not address this issue, and apparently concedes the point.

The plaintiff's motion in limine on this issue will be granted.

    T.    Past, unrelated discipline imposed upon Hyrum Johnson by defendant in the course of his railroad employment, (filing 173, ¶ 4).

The plaintiff argues that past discipline imposed by the UPRR on Hyrum Johnson over the course of his career is irrelevant. UPRR argues that evidence of discipline for unrelated incidents goes to Mr. Johnson's concern for safety, his work pattern and practices, and his lack of attentiveness to his job. In other words, UPRR intends to introduce Mr. Johnson's disciplinary record to prove his character for being a careless worker to prove he was contributorily negligent on the date of his accident. For the reasons discussed in section J above, character evidence is inadmissible to prove the plaintiff, on the date of the accident, acted in conformity therewith. The plaintiff's motion in limine will be granted.

IT THEREFORE HEREBY IS ORDERED:

1. The parties' motions in limine, filings 169 and 173, are granted and denied as discussed in this memorandum and order.

2. As to the supplemental motion in limine filed by UPRR on October 3, 2007, filing 189, any response by the plaintiff shall be addressed in plaintiff's trial brief. No reply brief is permitted on the filing 189 motion absent leave of the court for good cause shown.

DATED this 4th day of October, 2007.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge